Adam E. Lang (#022545)
Paloma M. Scheiferstein (#035672)
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: alang@swlaw.com
        pscheiferstein@swlaw.com

Keith M. Gregory (*pro hac vice forthcoming*)
SNELL & WILMER L.L.P.
350 South Grand Avenue
Suite 3100
Los Angeles, California 90071-3420
Telephone: 213.929.2500
Facsimile: 213.929.2525
E-Mail: kgregory@swlaw.com

*Attorneys for Plaintiff Gabriel Holdings, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gabriel Holdings, Inc., a California corporation, | No. |
| Plaintiff, | **COMPLAINT** |
| v. | (Jury Trial Requested) |
| The Armored Group Defence, LLC, an Arizona limited liability company, | |
| Defendant. | |

Plaintiff, Gabriel Holdings, Inc. ("Gabriel Holdings"), by and through undersigned counsel, brings the following complaint against The Armored Group Defence, LLC ("TAG") and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.  Gabriel Holdings is, and at all times relevant herein was, a California Corporation, having its headquarters in Los Angeles, California.

2. Upon information and belief, TAG is, and at all times relevant herein was, a limited liability company organized and existing under the laws of the State of Arizona, with its principal offices in Phoenix, Arizona.

3. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because TAG is a resident of the State of Arizona, with its principal offices in Phoenix, Arizona, and TAG agreed in the Non-Disclosure and Agency Agreement (the "Agreement") between the parties to submit to the jurisdiction and venue of the federal courts located in Maricopa County, Arizona. A true and correct copy of the Agreement is attached as **Exhibit 1**.

## BACKGROUND AND GENERAL ALLEGATIONS

5. On November 20, 2020, Gabriel Holdings and TAG entered into the Agreement. Ex. 1.

6. TAG is a company working in the field of Defense, Homeland Security and Law Enforcement with applications for the commercial sector. *Id.* ¶ 1.1.

7. As stated in the Paragraph 1.1 of the Agreement, TAG manufactures armored vehicles and other various specialty vehicles, and provides services and training, marketing and sales, after sales services, and material requirements.

8. Gabriel Holdings has extensive experience and contacts in Israel and an extensive network of contacts in the relevant agencies of defense contracting, military and aerospace. *Id.* ¶ 1.5.

9. Pursuant to the Agreement, Gabriel Holdings agreed to act as an agent of TAG for the procurement of opportunities, including those in foreign military or foreign military sales, involving Israeli technology and/or military equipment ("Project").

10. Additionally, Gabriel Holdings agreed not to promote or represent competing companies or products. *Id.* ¶ 1.6.

11. In exchange, TAG agreed that Gabriel Holdings would be entitled to a two percent (2%) commission based on and calculated using the contract price of any Project presented or introduced to TAG, directly or indirectly, by Gabriel Holdings, including opportunities presented by or through Yaron Livnat or ELTA/IAI. *Id.* ¶¶ 1.5, 2.1.

12. Paragraph 2.2 of the Agreement states, "[s]uch commission is payable on any subsequent Projects involving the same or similar parties and/or subject matter in the initial Project as well as any options within the same Project." *Id.* ¶ 2.2.

13. Paragraph 10 of the Agreement states, "[t]he obligations and commitments established to by this Agreement shall remain in full force and effect for five (5) years from the effective date of this Agreement." *Id.* ¶ 10.

14. Paragraph 10 of the Agreement also states, "[t]ermination of this Agreement must be in writing and must be mutual." *Id.*

15. The only other way to terminate the Agreement is if it is "terminated prematurely by either party for failure to meet the terms of this Agreement." *Id.* ¶ 2.2.

16. The governing law of the Agreement is the laws of the State of Arizona. *Id.* ¶ 4.1.

17. Acting as TAG's agent pursuant to the Agreement, Gabriel Holdings introduced several of its Israeli contacts to TAG.

18. As a result of these introductions, TAG has secured several Project contracts, entitling Gabriel Holdings to earn a two percent (2%) commission off of each Project contract, including the initial Project contract and any subsequent Project contracts involving the same or similar parties and/or subject matter as in the initial Project as well as any options within the same Project. *Id.* ¶¶ 2.1, 2.2.

19. On January 18, 2023, TAG sent Gabriel Holdings a Termination of Agency Agreement letter (the "Termination Letter"), which terminated the Agreement and wrongfully stated that Gabriel Holdings violated the Agreement. A true and correct copy of the Termination Letter is attached as **Exhibit 2**.

20. In the Termination Letter, TAG stated its reason for termination was that during a meeting in Washington D.C., Gabriel Holdings acknowledged its agency with Sierra Nevada Corporation ("Sierra Nevada") in Israel, and therefore, violated its agency agreement with TAG.

21. Although Gabriel Holdings does have an agreement with Sierra Nevada, the scope of the agreement is entirely different than the scope of Gabriel Holdings' Agreement with TAG.

22. Gabriel Holdings has not promoted or represented competing companies or products.

23. Gabriel Holdings has complied with all the Agreement's material provisions.

24. The work Gabriel Holdings does with Sierra Nevada is entirely different as Gabriel Holdings does not promote the marketing and sale of armored vehicles and other specialty vehicles for Sierra Nevada.

25. On January 27, 2023, Gabriel Holdings responded to the Termination Letter, explaining that: (a) Gabriel Holdings did not violate or breach the Agreement; (b) Gabriel Holdings did not agree to the termination of the Agreement; and (c) pursuant to the Agreement, any termination must be mutual, and therefore, the Agreement remains effective. A true and correct copy of Gabriel Holdings' Response to the Termination Letter is attached as **Exhibit 3**.

26. In its response, Gabriel Holdings asked TAG to respond in writing by February 3, 2023, informing Gabriel Holdings whether TAG rescinds the Termination Letter and if TAG agrees to continue to honor the conditions of the Agreement.

27. On February 8, 2023, TAG responded to Gabriel Holdings reaffirming its decision to terminate the Agreement. A true and correct copy of TAG's Response is attached as **Exhibit 4**.

28. Under the Agreement and applicable law, TAG has no right or ability to terminate the Agreement and the Agreement is still valid.

29. TAG must still uphold its responsibilities under the Agreement, including payment of a two percent (2%) commission to Gabriel Holdings for any opportunities Gabriel Holdings presented to TAG that financially benefit TAG.

## COUNT I

### (Breach of Contract – Failure to Pay)

30. Gabriel Holdings incorporates by this reference the allegations contained in the preceding paragraphs.

31. The Agreement is a valid, enforceable contract between Gabriel Holdings and TAG.

32. Gabriel Holdings has complied will all material provisions therein.

33. TAG has breached its contractual obligation to pay Gabriel Holdings a two percent (2%) commission based on and calculated using the contract price of any Project presented or introduced to TAG, directly or indirectly, by Gabriel Holdings, including opportunities presented by or through Yaron Livnat or ELTA/IAI.

34. By virtue of TAG's acceptance of Gabriel Holdings' services and TAG entering into contracts based on opportunities introduced to TAG by Gabriel Holdings, TAG owes Gabriel Holdings two percent (2%) commission for any Projects already acquired by TAG due to Gabriel Holdings.

35. TAG breached the Agreement in that, despite Gabriel Holdings satisfying all conditions and terms of the Agreement, TAG has failed to pay the two percent (2%) commission to Gabriel Holdings for opportunities Gabriel Holdings presented to TAG that financially benefitted TAG.

36. As a direct and proximate result of TAG's breach, Gabriel Holdings has been damaged in an amount of no less than two percent (2%) of each Project contract presented or introduced to TAG, directly or indirectly, by Gabriel Holdings, including opportunities presented by or through Yaron Livnat or ELTA/IAI, with the exact amount to be proven at trial, plus accrued and accruing interest.

37. Gabriel Holdings is entitled to recover attorneys' fees, costs, and expenses, pursuant to the Agreement and Arizona law. Ex. 1 ¶ 4.1; A.R.S. §§ 12-341, 12-341.01, and 12-1840.

## COUNT II

**(Breach of Contract – Termination of the Agreement)**

38. Gabriel Holdings incorporates by this reference the allegations contained in the preceding paragraphs.

39. The Agreement is a valid, enforceable contract between Gabriel Holdings and TAG.

40. Gabriel Holdings has complied with all material provisions therein.

41. Paragraph 10 of the Agreement states the "[t]he obligations and commitments established to by this Agreement shall remain in full force and effect for five (5) years from the effective date of this Agreement." Ex. 1 ¶ 10.

42. TAG breached the Agreement, despite Gabriel Holdings satisfying all conditions and terms of the Agreement, by prematurely terminating the Agreement unilaterally.

43. As a direct and proximate result of TAG's breach, Gabriel Holdings has been damaged in an amount of no less than two percent (2%) of each initial and subsequent Project contract presented or introduced to TAG, directly or indirectly, by Gabriel Holdings, including opportunities presented by or through Yaron Livnat or ELTA/IAI, with the exact amount to be proven at trial, plus accrued and accruing interest.

44. Gabriel Holdings is entitled to recover attorneys' fees, costs, and expenses, pursuant to the Agreement and Arizona law. Ex. 1 ¶ 4.1; A.R.S. §§ 12-341, 12-341.01, and 12-1840.

## Count III

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

45. Gabriel Holdings incorporates by this reference the allegations contained in the preceding paragraphs.

46. The Agreement is a valid, enforceable contract between Gabriel Holdings and TAG.

47. In addition to the express terms and conditions, a covenant of good faith and fair dealing is implied as a matter of law in every contract.

48. The implied covenant of good faith and fair dealing imposes on TAG a duty to act in good faith and deal fairly with Gabriel Holdings at all times, and to refrain from undertaking actions designed to deprive Gabriel Holdings of its bargain with TAG.

49. To the extent not expressed, implied in the Agreement is that TAG would notify Gabriel Holdings if TAG had any concerns regarding Gabriel Holdings' compliance with the terms of the Agreement before terminating the agreement.

50. TAG deprived Gabriel Holdings of its anticipated benefits under the Agreement by, among other things, unilaterally terminating the Agreement in violation of the Agreement, and failing to rescind the termination once Gabriel Holdings informed TAG of its violation. This conduct constitutes material breach of the implied covenant of good faith and fair dealing.

51. As a direct and proximate result of TAG's material breach of the implied covenant of good faith and fair dealing, TAG has deprived Gabriel Holdings of the benefit of its bargain under the Agreement, and damages Gabriel Holdings in an amount of no less than two percent (2%) of each initial and subsequent Project contract presented or introduced to TAG, directly or indirectly, by Gabriel Holdings, including opportunities presented by or through Yaron Livnat or ELTA/IAI, with the exact amount to be proven at trial, plus accrued and accruing interest. Ex. 1 ¶¶ 1.5, 2.1.

52. Gabriel Holdings is entitled to recover attorneys' fees, costs, and expenses, pursuant to the Agreement and Arizona law. *Id.* ¶ 4.1; A.R.S. §§ 12-341, 12-341.01, and 12-1840.

## COUNT IV

### (Unjust Enrichment)

53. Gabriel Holdings incorporates by this reference the allegations contained in the preceding paragraphs.

54. In the alternative to Counts I, II, & III, Gabriel Holdings conferred a benefit on TAG by securing lucrative Project opportunities for TAG as well as potential subsequent Projects.

55. TAG accepted and retained the benefits conferred by Gabriel Holdings.

56. TAG has been unjustly enriched to the detriment of Gabriel Holdings by, among other things, accepting the Project opportunities, by refusing to pay Gabriel Holdings the two percent (2%) commission payment on those initial Projects, by refusing to pay Gabriel Holding the two percent (2%) commission payment on potential subsequent Projects involving the same or similar parties and/or subject matter in the initial Project as well as any options within the same Project, and by prematurely terminating the Agreement.

57. Given the circumstances, TAG's acceptance of the Project opportunities without payment to Gabriel Holdings is unjust and inequitable. If TAG is not required to pay the two percent (2%) commission to Gabriel Holdings for the initial and subsequent Project contracts presented or introduced to TAG by Gabriel Holdings, including those opportunities presented by or through Yaron Livnat or ELTA/IAI, TAG will be unjustly enriched and Gabriel Holdings will be unjustly impoverished.

58. Because of TAG's unjust enrichment, Gabriel Holdings is entitled to damages in an amount of no less than two percent (2%) of each initial and subsequent Project contract presented or introduced to TAG, directly or indirectly, by Gabriel Holdings, including opportunities presented by or through Yaron Livnat or ELTA/IAI, with the exact amount to be proven at trial, plus accrued and accruing interest, additional costs, and attorneys' fees. Ex. 1 ¶ 4.1; A.R.S. §§ 12-341, 12-341.01, and 12-1840.

## COUNT V

**(Declaratory Judgment)**

59. Gabriel Holdings incorporates by this reference the allegations contained in the preceding paragraphs.

60. Gabriel Holdings seeks a declaratory judgment pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201(a).

61. Gabriel Holdings performed all of its obligations under the Agreement.

62. On January 18, 2023, TAG sent Gabriel Holdings a Termination Letter, wrongfully terminating the Agreement.

63. On January 27, 2023, Gabriel Holdings responded to the Termination Letter, explaining that Gabriel Holdings did not violate or breach the Agreement, that Gabriel Holdings did not agree to the termination of the Agreement, and that pursuant to the Agreement, any termination must be mutual, and therefore, the Agreement remains effective.

64. On February 8, 2023, TAG responded to Gabriel Holdings reaffirming its decision to terminate the Agreement.

65. As a result, an actual and justiciable case or controversy exists between Gabriel Holdings and TAG as to whether the Agreement has been terminated.

66. Gabriel Holdings seeks a judicial declaration and declaratory judgment that: (a) the Agreement is a valid agreement; (b) TAG does not have a right to unilaterally terminate the Agreement; and (c) Gabriel Holdings is entitled to a two percent (2%) commission based on and calculated using the contract price of any Project presented or introduced to TAG, directly or indirectly, by Gabriel Holdings, including opportunities presented by or through Yaron Livnat or ELTA/IAI.

67. This claim arises from a contract between Gabriel Holdings and TAG. Therefore, Gabriel Holdings is entitled to recover attorneys' fees, costs, and expenses, pursuant to the Agreement and Arizona law. Ex. 1 ¶ 4.1; A.R.S. §§ 12-341, 12-341.01, and 12-1840.

## REQUESTED RELIEF

WHEREFORE, Plaintiff Gabriel Holdings, Inc. respectfully requests that the Court enter judgment in its favor and against TAG as follows:

A. For an award of damages, including actual, compensatory, incidental, consequential, and/or restitutionary damages in an amount to be proven at trial, but in an amount no less than two percent (2%) of each initial and subsequent Project contract presented or introduced to TAG, directly or indirectly, by Gabriel Holdings, including opportunities presented by or through Yaron Livnat or ELTA/IAI;

B. For an award of Gabriel Holdings' reasonable attorneys' fees and costs incurred, pursuant to Paragraph 4.1 of the Agreement and pursuant to A.R.S. §§ 12-341, 12-341.01, and 12-1840;

68. For a judicial declaration and declaratory judgment, pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201(a), that (a) the Agreement is a valid agreement; (b) TAG does not have a right to unilaterally terminate the Agreement; and (c) Gabriel Holdings is entitled to a two percent (2%) commission based on and calculated using the contract price of any Project presented or introduced to TAG, directly or indirectly, by Gabriel Holdings, including opportunities presented by or through Yaron Livnat or ELTA/IAI;

C. For an award of prejudgment interest on the foregoing calculated from the earliest date at the maximum rate allowed by law;

D. For an award of post-judgment interest on the foregoing at the maximum rate allowed by law from the date of entry of judgment until paid in full;

E. For post-judgment collection attorneys' fees and costs; and

F. For such other and further relief as the Court deems just and proper

## DEMAND FOR A TRIAL BY JURY

Gabriel Holdings demands a trial by jury on any issue so triable.

1  DATED this 16th day of February, 2023.

                                    SNELL & WILMER L.L.P.


                                    By: *s/ Paloma Scheiferstein*
                                        Adam E. Lang
                                        Paloma M. Scheiferstein
                                        One East Washington Street
                                        Suite 2700
                                        Phoenix, Arizona  85004-2556
                                        *Attorneys for Plaintiff Gabriel Holdings, Inc.*